UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WENDEI L. P., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C18-5907-BHS-MLP <br><br> REPORT AND RECOMMENDATION |

## I.   INTRODUCTION

Plaintiff seeks review of the partial denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in discounting opinions written by treating psychologist David Reynolds, Ph.D.; discounting Plaintiff's testimony; discounting a lay statement; and failing to meet the Commissioner's burden at step five. (Dkt. # 10 at 1-2.) As discussed below, the Court RECOMMENDS that the Commissioner's final decision be AFFIRMED and this matter DISMISSED with prejudice.

## II.   BACKGROUND

Plaintiff was born in 1962, has a high school diploma and two years of college education, and has worked as, *inter alia*, an advertising sales executive, insurance agent and

REPORT AND RECOMMENDATION - 1

office manager, and yoga instructor. AR at 52, 250, 293, 305-06. Plaintiff was last gainfully employed in January 2015. *Id*. at 52-53.

In December 2014, Plaintiff protectively applied for benefits, alleging disability as of January 12, 2014.[1] AR at 116, 200-06. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 125-27, 132-40. After the ALJ conducted a hearing on April 19, 2017 (*id*. at 47-83), the ALJ issued a decision finding Plaintiff not disabled before November 1, 2017, and disabled as of that date and thereafter. *Id*. at 18-36.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since October 1, 2014.

Step two: Plaintiff's psoriatic arthritis, osteoarthritis, degenerative disc disease, lumbar radiculitis, leg length discrepancy, trochanteric hip bursitis, gluteal syndrome, depressive disorder, and anxiety disorder are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity ("RFC"): Plaintiff can perform sedentary work with additional limitations: she cannot climb ladders ropes, or scaffolds. She can occasionally climb ramps or stairs, kneel, crouch, and crawl. She can frequently balance and stoop. She can frequently handle and finger bilaterally. She should avoid concentrated exposure to vibrations and hazards in the workplace. She can occasionally push and/or pull bilaterally. She can perform unskilled and semi-skilled tasks consistent with a Specific Vocational Preparation (SVP) level up to SVP 4. She can perform low-stress work, which is defined as work requiring few decisions and few changes throughout the workday. She can have frequent contact with co-workers and the public.

Step four: Plaintiff cannot perform past relevant work.

Step five: Before November 1, 2017, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, and therefore Plaintiff was not disabled. But as of November 1, 2017, there are no jobs that exist in significant numbers that Plaintiff could perform, and Plaintiff became disabled on that date.

---

[1] She subsequently amended her alleged onset date to October 1, 2014. AR at 18, 351.
[2] 20 C.F.R. § 404.1520.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

*Id.*

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

### III.     LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Discounting Plaintiff's Subjective Testimony

The ALJ discounted Plaintiff's subjective testimony because (1) the medical evidence showed improvement with treatment and sufficient functional ability to perform sedentary work at the unskilled and semi-skilled levels, with the limitations identified in the ALJ's RFC assessment; (2) Plaintiff's activities contradict her alleged physical and social limitations; and (3) the evidence shows that she stopped working to care for her elderly father, rather than only because of her own conditions. AR at 30-31. Plaintiff argues that these reasons are not legally sufficient, and the Court will address them in turn.

#### 1. *Legal Standards*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504

1  F.3d 1028, 1036 (9th Cir. 2007).

2  When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. *Inconsistent Medical Evidence: Physical*

The ALJ cited evidence showing that Plaintiff's surgery and rehabilitation improved her low back pain and resolved the radiating symptoms in her legs, and that Remicade infusions in 2016 improved her joint pain and swelling caused by psoriatic arthritis. AR at 30. The ALJ also referenced evidence documenting normal gait, intact toe and heel walking, full range of joint motion, intact strength and sensation, and intact extremity reflexes. *Id*. From this evidence, the ALJ concluded that Plaintiff could perform sedentary work activity, with additional restrictions as to pushing/pulling, postural, manipulative, and environmental activities, which was inconsistent with her allegation of disability. *Id*.

Plaintiff does not specifically challenge this line of reasoning. (*See generally* Dkt. # 10.) This reason supports the ALJ's discounting of Plaintiff's subjective allegations based on inconsistent objective evidence. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain

testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

### 3. *Inconsistent Medical Evidence: Mental*

The ALJ found that Plaintiff's failure to seek mental health treatment until 2015 also undermined her allegation of disabling mental limitations beginning in 2014. AR at 30. The ALJ also noted that Plaintiff's mental symptoms improved with therapy and medication, and that the objective mental findings were often inconsistent with allegations of disabling mental limitations. *Id.* at 30-31. Accordingly, the ALJ found that Plaintiff's mental limitations were not as severe as alleged. *Id.*

Plaintiff argues only that she should not be penalized for failing to realize her need for treatment earlier. (Dkt. # 10 at 12-13.) This argument fails to account for the totality of the ALJ's reasoning: the ALJ noted that Plaintiff did not receive much treatment early on, and then when she did receive treatment her symptoms improved and did not result in disabling limitations. This reasoning supports the ALJ's conclusion and is supported by substantial evidence. *See Wellington*, 878 F.3d at 876; *Rollins*, 261 F.3d at 857.

Plaintiff also suggests that the ALJ's reasoning is internally inconsistent because the ALJ found that she became disabled in 2017, despite his contention that her symptoms improved with treatment. (Dkt. # 10 at 13.) But the ALJ found that Plaintiff became disabled at a certain time as a result of her increasing age, rather than a worsening of her condition. AR at 34-36. Thus, the ALJ's reasoning is not internally inconsistent.

### 4. *Activities: Physical*

The ALJ contrasted Plaintiff's description of difficulty getting out of bed, and difficulty

with lifting, standing, and walking, with her ability to cook, perform household chores and yard work, shop, drive (including a round-trip between Olympia and Bellingham in one day), perform yoga, and type. AR at 31. The ALJ concluded that Plaintiff's activities suggest that she is not as physically limited as she alleged. *Id*.

Plaintiff disputes that her Bellingham trip demonstrates she retained more physical abilities than alleged. (Dkt. # 10 at 14.) Even if, as Plaintiff contends, the drive to and from Bellingham does not contradict her alleged limitations, the ALJ cited other activities that do reasonably contradict her testimony. The ALJ did not err in relying on these inconsistencies to discount Plaintiff's subjective allegations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]").

        5.    *Activities: Social*

The ALJ noted that although Plaintiff testified that she has trouble being around other people, the record shows that she goes to the movies, visits a Buddhist temple, attends yoga classes, and went on an Alaska cruise, which all require being around other people. AR at 31. The ALJ concluded that Plaintiff's social limitations were not as severe as alleged. *Id*.

Plaintiff contends that her participation in physical activities during the Alaska cruise was limited (dkt. # 10 at 14), but she does not specifically challenge the conclusions the ALJ drew about Plaintiff's *social* limitations. The ALJ did not err in relying on inconsistencies regarding Plaintiff's social activities and limitations in discounting her subjective allegations. *See Orn*, 495 F.3d at 639.

        6.    *Reasons Work Ended*

The ALJ found that although Plaintiff testified that she stopped working due to her

impairments, she was also motivated to stop working to care for her elderly father until he died. AR at 31. The record cited by the ALJ does suggest that Plaintiff stopped working (at least in part) in order to care for her father (AR at 945), which would support the ALJ's conclusion, because "a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work." Social Security Ruling 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982). But the wording of the ALJ's finding leaves open the possibility that Plaintiff stopped working for multiple reasons, *including* her caregiving responsibilities for her father, and the ALJ did not find that the *primary* reason why Plaintiff stopped working was to care for her father.

Any error in this portion of the ALJ's reasoning is harmless, however, because the ALJ provided multiple other reasons to discount Plaintiff's testimony, which are untainted by this erroneous reason. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The Court should affirm the ALJ's assessment of Plaintiff's subjective allegations.

### B.     The ALJ Did Not Err in Discounting a Lay Statement

Plaintiff's friend, Janet Frailey, completed a third-party function report form in March 2015, describing Plaintiff's symptoms and limitations. AR at 265-72. The ALJ summarized Ms. Frailey's comments, and discounted her description of disabling limitations based on inconsistency with the objective medical record. *Id*. at 32. Specifically, the ALJ found the evidence of Plaintiff's improvement with back surgery and minimal treatment for psoriatic arthritis until 2016 to be inconsistent with Ms. Frailey's statement. *Id*. The ALJ also found that Plaintiff's "demonstrated cognitive and social functioning throughout the record" contradicts Ms. Frailey's statement. *Id*.

An ALJ's reasons to discount a lay statement must be germane. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses,

he must give reasons that are germane to each witness."). Plaintiff argues that the ALJ erred in discounting Ms. Frailey's statements as unsupported by the medical record (dkt. # 10 at 16), but the ALJ in fact discounted the statement as *inconsistent* with the medical record, which is a germane reason to discount a lay statement. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984))).

Furthermore, although Plaintiff cites an August 2015 treatment note that describes a psoriatic arthritis evaluation (dkt. # 10 at 17 (citing AR at 793)), this treatment note does not contradict the ALJ's finding that Plaintiff received minimal treatment for this condition prior to 2016: this treatment note describes an initial evaluation, but does not document more than "minimal treatment" prior to 2016.

Because the ALJ provided germane reasons to discount Ms. Frailey's statement, the ALJ's assessment of this statement should be affirmed.

**C.   The ALJ Did Not Err in Discounting Dr. Reynolds' Opinions**

Dr. Reynolds began treating Plaintiff in June 2015, with therapy visits once or twice per month since that time. AR at 805, 810. Dr. Reynolds completed a number of form opinions and wrote a narrative opinion report in October 2015 and September 2016, describing Plaintiff's symptoms, diagnoses, and limitations. *Id*. at 805-17.

The ALJ summarized Dr. Reynolds' findings and found that his opinions were not entirely consistent with the medical record, which showed that Plaintiff's physical and mental symptoms improved with treatment. AR at 33. The ALJ also found Dr. Reynolds' opinions to be inconsistent with Plaintiff's "strong performances during psychological evaluations." *Id*. To the extent that Dr. Reynolds' opinions contain conclusory statements regarding Plaintiff's ability to

1  work, the ALJ found those statements to pertain to issues reserved to the Commissioner. *Id*. The

2  ALJ further discounted Dr. Reynolds' opinions in light of his heavy reliance on Plaintiff's pain

3  and physical symptoms. *Id*. Although Dr. Reynolds described Plaintiff as "essentially bedridden

4  4 to 6 hours per day 33% to 50% of the time" (AR at 813), the ALJ found this description to be

5  unsupported by evidence in the record and inconsistent with Plaintiff's self-reported activities,

6  such as walking several miles regularly, performing yoga, and completing household chores. *Id*.

7  at 33. Plaintiff argues that these reasons are not legally sufficient, and the Court will address

8  them in turn.

         *1.     Legal Standards*

10        As a matter of law, more weight is given to a treating physician's opinion than to that of a

11  non-treating physician because a treating physician "is employed to cure and has a greater

12  opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see*

13  *also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however,

14  is not necessarily conclusive as to either a physical condition or the ultimate issue of disability,

15  and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If

16  an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and

17  convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific

18  and legitimate reasons if it is.[4] *Reddick*, 157 F.3d at 725. "This can be done by setting out a

19  detailed and thorough summary of the facts and conflicting clinical evidence, stating his

20  interpretation thereof, and making findings." *Id*. (citing *Magallanes*, 881 F.2d at 751). The ALJ

---

[4] Although Plaintiff suggests that the ALJ's reasons had to be clear and convincing because Dr. Reynolds' opinion was not contradicted by the psychological examiner (dkt. # 10 at 6), Dr. Reynolds' opinion was contradicted by the State agency doctors (who found Plaintiff to be not disabled (AR at 96-99, 111-15)) and thus the ALJ was required to provide specific and legitimate reasons to discount it.

1  must do more than merely state his/her conclusions. "He must set forth his own interpretations
2  and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849
3  F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial
4  evidence. *Reddick*, 157 F.3d at 725.

### 2. *Improvement With Treatment*

6  The ALJ discounted Dr. Reynolds' opinions because they were not entirely consistent
7  with the objective medical record, which "establish that the claimant's medical conditions have
8  improved with appropriate treatment." AR at 33. As discussed *supra*, the ALJ explained in detail
9  which evidence he relied upon in making this finding, specifically related to the surgery that
10 improved her low back pain and resolved the radiating symptoms in her legs, and the Remicade
11 infusions in 2016 improved her joint pain and swelling caused by psoriatic arthritis. *See id*. at 30.
12 Plaintiff's attempt to isolate this paragraph from the remainder of the decision is unhelpful (dkt.
13 # 10 at 6), because the ALJ's decision should be read as a whole. *See Christopher A. v. Berryhill*,
14 2019 WL 1787223, at *6 (W.D. Wash. Apr. 24, 2019) (citing *Rice v. Barnhart*, 384 F.3d 363,
15 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole . . .")).

### 3. *"Strong Performance on Psychological Evaluations"*

17 The ALJ also found Dr. Reynolds' opinions to be inconsistent with evidence showing
18 that Plaintiff's mental symptoms improved with treatment, "as well as her strong performances
19 during psychological evaluations." AR at 33. Plaintiff contends that she is unsure to which
20 "strong performances" the ALJ is referring. (Dkt. # 10 at 8.) The ALJ's decision contains
21 specific reference to "strong intellectual and cognitive functioning during evaluations and
22 treatment visits." AR at 30 (citing *id*. at 423, 434, 436, 673, 768, 770, 831, 865, 891-94). When
23 the ALJ's decision is read as a whole, it is clear which evidence the ALJ is referencing, and that

1  evidence indeed supports the ALJ's conclusion. The ALJ did not err in pointing to inconsistent

2  evidence as a reason to discount Dr. Reynolds' opinions. *See Tommasetti v. Astrue*, 533 F.3d

3  1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between

4  the opinion and the medical record).

    *4.    Issues Reserved to the Commissioner*

6  The ALJ noted that Dr. Reynolds commented on Plaintiff's ability to work, which is an

7  issue reserved to the Commissioner. AR at 33 (referencing *id*. at 805 (Dr. Reynolds' reference to

8  Plaintiff as "unable to work"), 807 ("[Plaintiff's] combination of chronic pain and depression

9  suggests she is too disabled to work."), 813 (opining as to what employers would not tolerate)).

10 To the extent that these comments infringe on issues reserved to the Commissioner, the ALJ did

11 not err in setting those comments to the side in determining whether Dr. Reynolds' opinion was

12 consistent with the record. *See* SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996). Plaintiff's brief is

13 not responsive to the ALJ's finding on this issue, and does not establish that the ALJ erred in

14 noting that Dr. Reynolds commented on an issue reserved to the Commissioner. (Dkt. # 10 at 6-

15 7.)

    *5.    Reliance on Self-reported Physical Limitations*

17 The ALJ interpreted Dr. Reynolds' opinion as relying on Plaintiff's self-report of pain

18 and physical limitation. AR at 33. This interpretation is supported by substantial evidence. *See*

19 *id*. at 807 (Dr. Reynolds' opinion that Plaintiff's "combination of chronic pain and depression

20 suggests she is too disabled to work"), 809 (Dr. Reynolds states that Plaintiff can only work for

21 two hours per day "based primarily on observation of her chronic pain and resultant lack of

22 stam[ina]"), 813 (Dr. Reynolds' description of Plaintiff as "essentially bedridden 4 to 6 hours per

23 day 33% to 50% of the time"). The ALJ did not err in discounting Dr. Reynolds' opinion to the

extent that it was based on physical symptoms for which he did not treat Plaintiff, as well as symptoms that have been amenable to treatment (as discussed *supra*). Although Plaintiff argues, again, that the ALJ's decision regarding medical improvement is internally inconsistent with his finding that she became disabled in 2017, this argument fails to account for the fact that Plaintiff was found disabled in 2017 based on a change in age, rather than a change in her condition.

    6.  *Activities*

  The ALJ cited Plaintiff's activities as evidence that contradicts Dr. Reynolds' conclusion that Plaintiff would be "bedridden up to six hours per day." AR at 33. There is substantial evidence in the record to support this finding. *See, e.g.*, *id*. at 531 (Plaintiff reported that she teaches yoga at least two times per week), 590 (she reported that she still teaches yoga once a week, wants to know how soon she can start hiking and biking after surgery), 661 (she walked 1.5 miles), 668 (she reported walking 30-40 mins), 682 (she is walking an hour a day), 730 (she is walking up to four miles), 1022 (she is walking 30-60 minutes per day, also performing yoga), 1024 (she is teaching senior yoga), 1059 (she is walking for 45 minutes five times weekly). The ALJ reasonably found these activities inconsistent with Dr. Reynolds' description of Plaintiff as bedridden up to six hours per day. Even if, as Plaintiff contends (dkt. # 10 at 9), these activities could in theory be performed by someone who spends a lot of time laying down, taking multiple multi-hour naps per day, the ALJ was not unreasonable in finding these activities to be inconsistent with Plaintiff's allegations. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

  Because the ALJ provided multiple specific and legitimate reasons to discount Dr. Reynolds' opinions, the ALJ's assessment of those opinions should be affirmed.

### D. The ALJ Did Not Err at Step Five

At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). Plaintiff alleges multiple errors in the ALJ's step-five findings.

First, Plaintiff argues that the ALJ erred in finding that she could perform other work as a reservations agent, because the mental demands of this job exceed her capabilities as described by the State agency consultants. (Dkt. # 10 at 10-11.) According to Plaintiff, the State agency opinion that Plaintiff is limited to understanding and performing "at least short and simple instructions" (AR at 112) is inconsistent with the requirements of the reservations agent job, which involves complex tasks. (Dkt. # 10 at 10-11.) Plaintiff overlooks that the ALJ did not entirely adopt the State agency opinions, but found Plaintiff to be less restricted than the consultants did. AR at 33. Specifically, although the State agency consultants found that Plaintiff "may have occasional interference in remembering detailed instructions" (*id*. at 96, 112) and "occasional interference in sustained concentration and completing detailed tasks" (*id*. at 97, 112) the ALJ concluded that "their opinions regarding the claimant having occasional interference is not consistent with the claimant's improvement with medication and therapy." *Id*. at 33. Plaintiff did not challenge the ALJ's assessment of the State agency opinions, and has not shown that the ALJ's assessment was erroneous. Thus, there is no inconsistency between the reservations agent job and the ALJ's RFC assessment, and therefore step-five error in this respect.

Plaintiff unpersuasively suggests that it is unclear what the ALJ was referring to when he mentioned the State agency opinions "regarding the claimant having occasional interference"

1  (dkt. # 15 at 2), but the context makes it clear that the ALJ is referring to the portions of the

2  opinions that refer to "occasional interference." Plaintiff also contends that reading it as the

3  Court does would create an internal inconsistency with the ALJ's finding that Plaintiff became

4  disabled in 2017. (Dkt. # 15 at 2-3.) But again, the ALJ's finding of disability beginning in 2017

5  is the result of an age change, rather than a change in condition.

6  Second, Plaintiff argues that the ALJ erred in finding that she could perform the

7  reservations agent job because (1) the job description seems to involve activities (high-stress

8  tasks and public contact) that would be precluded by the ALJ's RFC assessment, (2) the job does

9  not exist in significant numbers, and (3) one job cannot alone satisfy the ALJ's burden. (Dkt. #

10 10 at 10.) Plaintiff's first argument is not persuasive in light of the vocational expert's ("VE")

11 testimony that a person with Plaintiff's RFC assessment could, in fact, perform the reservations

12 agent job, based on the VE's "professional experience, education, review of professional

13 literature, development of job analyses and completion of occupational research." AR at 81. The

14 ALJ explicitly referenced the hypothetical person's social limitations and need for low-stress

15 work, among other limitations, in asking the VE to explain the basis for his testimony. *Id.*

16 Plaintiff cites no authority requiring the ALJ to inquire further, and the Court is not aware of any.

17 Furthermore, this job does exist in significant numbers. The ALJ noted that there are

18 21,438 reservation agent jobs in the national economy. AR at 35. Although the Ninth Circuit has

19 declined to set a "bright line" rule defining a significant number, that this court and other courts

20 in this circuit have found fewer numbers of national jobs to be significant is instructive. *See, e.g.*,

21 *Montalbo v. Colvin*, 231 F.Supp.3d 846, 863 (D. Haw. 2017) (finding 12,300 national jobs to be

22 significant); *Connolly v. Colvin*, 2016 WL 8730722, at *6 (E.D. Cal. Sep. 16, 2016) (finding that

23 more than 10,000 national jobs (19,000 in this case) is a sufficient to establish that a job exists in

significant numbers); *Aguilar v. Colvin*, 2016 WL 3660296, at *3 (C.D. Cal. Jul. 8, 2016) (finding that more than 10,000 national jobs (11,850 in this case) is significant); *Murphy v. Colvin*, 2013 WL 5371955, at *14 (W.D. Wash. 2013) (finding 17,782 national jobs to be significant). Plaintiff has not cited persuasive authority indicating that the 21,438 national job number in this case is not significant.

Lastly, contrary to Plaintiff's argument (dkt. # 10 at 11 (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(e)), the ALJ did not err in finding that Plaintiff could perform a single job utilizing transferable skills. Although the Ninth Circuit has found error in a similar case involving a light work analysis, the Ninth Circuit has explicitly declined to extend this analysis to a claimant (like Plaintiff) who is limited to sedentary work. *See Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1044; *Klal v. Berryhill*, 690 Fed. Appx. 499, 502 (9th Cir. Apr. 28, 2017). Plaintiff's argument has been rejected by the Ninth Circuit.

## V.  CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's final decision be AFFIRMED and this case DISMISSED with prejudice.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **fourteen (14)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days

1  after service and filing of objections. If no timely objections are filed, the matter will be ready

2  for consideration by the District Judge on the date that objections were due.

3  Dated this 24th day of May, 2019.

*[signature]*

MICHELLE L. PETERSON
United States Magistrate Judge